IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BREAST CARE CENTER OF HAWAIʻI LLC, | CIVIL NO. 17-443 JAO-WRP |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| FUJIFILM MEDICAL SYSTEMS U.S.A., INC., | |
| Defendant. | |

## <u>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

This case concerns Defendant Fujifilm Medical Systems' ("Fujifilm") sale of digital mammography equipment to Plaintiff Breast Care Center of Hawaiʻi LLC ("BCCH") and its agreement to service and maintain the equipment for four years. BCCH's Complaint alleges that Fujifilm made false promises to induce BCCH to enter into the contract and breached the incorporated service agreement. Fujifilm filed a counterclaim for failure to pay annual service fees. Presently before the Court is Fujifilm's Motion for Summary Judgment on BCCH's claims and Fujifilm's counterclaim. For the reasons set forth below, the Motion is GRANTED as to all of BCCH's claims and DENIED as to Fujifilm's counterclaim.

# I.    BACKGROUND

## A.    Undisputed Facts

BCCH is a medical service provider founded by Dr. Beth Rhodes.  ECF No. 1 at 1–2.  In June 2012, BCCH purchased three different pieces of equipment from Fujifilm:  (1) an Aspire HD mammography system, (2) a Biopsy Positioner, and (3) a Synapse Express Picture Archiving and Communication System (PACS).  ECF No. 44 ¶ 1.  BCCH and Fujifilm executed the purchase agreement for the Aspire HD System, which incorporated Fujifilm's standard conditions of sale agreement ("the Conditions of Sale Agreement"), a service agreement for service and maintenance of the equipment ("the Service Agreement"), and an "End User Purchase, License and Services Agreement" ("the End User Agreement"). [1]  ECF No. 44 ¶ 2.

The written Service Agreement provided for four years of service and maintenance of the equipment, commencing after the one-year warranty expired.  ECF No. 1 at 4; ECF No. 44 ¶ 6.  The Service Agreement indicates that Fujifilm would provide one maintenance inspection and calibration per year; scheduled and emergency services; all replacement parts, labor, and travel, performed by factory-

---

[1] The parties appear to agree that all the agreements are to be read as one agreement, with the End User Agreement applying to the purchase, warranty, and service obligations.  *See* ECF No. 62 at 2; ECF No. 44 at 2 ¶ 2.  The Court will refer to these collectively as "the contract."

trained service engineers; and one-hour telephone and four-hour on-site response time.  ECF No. 43-14 at 3.  Under the Service Agreement, BCCH was to pay Fujifilm $33,270 per year in advance for these services.  *Id.*

The End User Agreement contains numerous provisions limiting Fujifilm's liability under the Service Agreement.  Specifically, the End User Agreement precludes liability for any consequential damages, caps damages at the amount of annual fees paid, and states that Fujifilm will not be liable for any breach of the professional and workmanlike service warranty unless BCCH provides Fujifilm with thirty-days written notice of any alleged breach.  ECF No. 44 at 2 ¶¶ 8–9; ECF No. 43-11 at 6.  The End User Agreement also contains a provision prohibiting oral modifications.  ECF No. 43-11 at 10.

Fujifilm replaced the equipment in May 2013, after BCCH moved offices and after BCCH had complained to Fujifilm that the equipment malfunctioned regularly.  Fujifilm then applied a new eight-month warranty beginning May 2013 and a four-year Service Agreement beginning May 2014.  It is undisputed that BCCH never paid its annual fees under the Service Agreement and that Fujifilm terminated the contract in August 2017.[2]  ECF No. 44 ¶ 28; ECF No. 62 at 11.  The reasons for the termination are in dispute, as described below.

---

[2] The record shows that both parties were initially confused about whether Dr. Rhodes had pre-paid the Service Agreement fees.  *See* ECF No. 43-49 at 15.

## B. Disputed Facts

BCCH contends that it entered into the contracts based on Fujifilm's verbal assurances, which included that: (1) it had six "cross-trained" field service engineers in Hawaiʻi who could assist Dr. Rhodes; (2) it would adjust the annual service fees based on the number of mammograms BCCH performed per year, and that Fujifilm would refund to BCCH any overpayment after the annual service fees were reduced; and (3) it would compensate BCCH for any losses incurred from Fujifilm's inability to service the equipment. ECF No. 1 ¶¶ 11, 12, 17, 20, 35; ECF No. 63 ¶¶ 1–2. Fujifilm denies that its employees made such statements. ECF No. 44 ¶¶ 7, 16, 24.

Plaintiff alleges that the equipment stopped working almost immediately and Defendant failed to repair it. ECF No. 1 at 29–31; ECF No. 63 ¶¶ 4–9. Fujifilm contends that the malfunctioning was due, in significant part, to user error. ECF No. 43-1 at 17–18; ECF No. 43-3 ¶ 17.

BCCH alleges that Fujifilm only remedied the problems with the equipment in May 2013 by replacing the Aspire HD and Biopsy Positioner. ECF No. 1 ¶ 30; ECF No. 62-1 ¶¶ 9–11; ECF No. 44 ¶ 20. BCCH alleges that problems emerged with the replacement equipment, and Fujifilm did not satisfy its service obligations. ECF No. 63 ¶¶ 6–9. Fujifilm disputes this, contending that the new

equipment was fine and that Dr. Rhodes' emails to Fujifilm indicate as much. ECF No. 43-3 ¶ 25.

A significant point of dispute is what happened regarding payment of the Service Agreement fees. BCCH contends that it received invoices from Fujifilm for the Service Agreement beginning in 2014, that BCCH disputed the invoices, and Fujifilm opted not to collect on the invoices due to the equipment's continued failures. ECF No. 63 ¶ 10. Fujifilm contradicts this, saying that it billed BCCH quarterly for the service fees and repeatedly demanded payment. ECF No. 44 ¶¶ 26–27. BCCH alleges that Fujifilm's termination forced them to purchase replacement equipment in 2018. ECF No. 63 ¶ 11.

### C.    Case Status

BCCH brought this lawsuit on September 5, 2017. ECF No. 1. The Complaint asserts numerous causes of action against Fujifilm, but counsel for BCCH abandoned several of its claims at the hearing on the Motion. The Court therefore DISMISSES the following abandoned claims and TERMINATES the Motion as to these claims: Fraudulent Inducement (Count I); Breach of Implied Covenant of Good Faith and Fair Dealing (Count IV); Intentional Interference (Count V); Unjust Enrichment (Count VI); Declaratory Relief (Count VIII); and Specific Performance (Count IX). This Order addresses the remaining claims, which are: Negligent Misrepresentation (Count II); Breach of Contract (Count III),

and Promissory Estoppel (Count VII). *See* ECF No. 1 ¶¶ 10, 11, 14. Fujifilm also asserted a breach of contract counterclaim against BCCH, alleging that BCCH never paid the annual service fees. ECF No. 9-1.

Fujifilm brought the present Motion for Summary Judgment on November 19, 2018, seeking summary judgment on all of BCCH's claims, as well as on its counterclaim. ECF No. 43-1. Fujifilm contends that the statute of limitations precludes all three of the remaining causes of action. *See* ECF No. 43-1 at 26–32. Fujifilm also argues that the terms of the contract bar the breach of contract claim. *Id.* at 32–37. Specifically, Fujifilm asserts that the contract: (1) caps damages to the annual service fees paid; (2) requires BCCH to provide written notice within thirty days of any breach of the Service Agreement; and (3) precludes oral modifications. *Id.* Fujifilm also argues that BCCH's failure to pay the annual service fees bars the breach of contract claim. *Id.* at 37–38. Fujifilm further contends that because the alleged promises are covered by the contract, the equitable claim for promissory estoppel is barred as a matter of law. *Id.* at 38. Finally, Fujifilm asserts that the negligent misrepresentation claim is barred because: (1) Hawaiʻi law does not recognize such claims when the alleged misrepresentations are merely promises of future conduct and (2) BCCH waived its claims by reaffirming the contract after becoming aware of the alleged misrepresentations. *Id.* at 38–41.

BCCH filed its opposition to the motion on March 1, 2019.  ECF No. 62.

BCCH opposes the statute of limitations issue and the argument that BCCH's

failure to pay the annual service fees excused Fujifilm's performance.  ECF No.

62.  BCCH also opposes Fujifilm's Motion regarding Fujifilm's counterclaim,

arguing that Fujifilm's breach of the Service Agreement excused BCCH's payment

requirements.  *Id.* at 11.  BCCH did not address the other grounds on which

Fujifilm seeks summary judgment.  Fujifilm filed its reply on March 19, 2019.

ECF No. 66.

## II.    STANDARD OF REVIEW

Summary judgment is proper when there are no genuine issues of material

fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(a).  Federal Rule of Civil Procedure 56(a) mandates summary judgment

"against a party who fails to make a showing sufficient to establish the existence of

an element essential to that party's case, and on which that party will bear the

burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see*

*also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing

the court of the basis for its motion and of identifying those portions of the

pleadings and discovery responses that demonstrate the absence of a genuine issue

of material fact."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir.

2007) (citing *Celotex*, 477 U.S. at 323). "When the moving party has carried its burden under Rule 56[(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] . . . come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586–87 (1986) (internal quotation marks and citations omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." (internal quotation marks omitted)).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the Court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmoving party] is to be believed, and all justifiable inferences are to be drawn in his [or her] favor").

# III. ANALYSIS

Fujifilm moves for summary judgment on all of BCCH's claims and on its own breach of contract counterclaim. By failing to oppose many of Fujifilm's arguments for summary judgment, BCCH waived those issues. *Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) ("We have previously held that a plaintiff has 'abandoned . . . claims by not raising them in opposition to [the defendant's] motion for summary judgment.'" (quoting *Jenkins v. Cty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2008))); *Abogados v. AT&T, Inc.*, 223 F.3d 932, 937 (9th Cir. 2000); *Packnett v. Gomez*, 182 F.3d 926 (9th Cir. 1999); *see also Ramirez v. Ghilotti Bros. Inc.*, 941 F.Supp.2d 1197, 1210 n.7 (N.D. Cal. 2013) (listing cases). But regardless of BCCH's waiver, Fujifilm is entitled to summary judgment on several grounds.

The Court addresses BCCH's claims against Fujifilm first, and then addresses Fujifilm's counterclaim.

## A. BCCH's Claims Against Fujifilm

### i. Breach of Contract (Count III)

BCCH alleges that Fujifilm breached the Service Agreement. ECF No. 1 at 11. BCCH, however, takes contradictory positions with respect to how and when the breach (or breaches) occurred. The Complaint alleges that the equipment experienced massive technical problems almost immediately after sale, and that

Fujifilm was unable to fix the problems until it replaced the machinery more than a year later. ECF No. 1 ¶ 31. The Complaint further alleges that even after Fujifilm replaced the equipment, Fujifilm "fail[ed] to provide adequate technical support." *Id.* ¶ 40. In its opposition brief too, BCCH alleges that Fujifilm's failure to "employ an on-site engineer trained to service BCCH's equipment . . . was a "material breach of the service agreement from its inception." ECF No. 62 at 11. But at the hearing, perhaps to avoid Fujifilm's statute of limitations defense, BCCH contended that Fujifilm first breached the contract in 2017 by terminating the agreement and refusing to perform further service or maintenance. Under either of these inconsistent positions, however, summary judgment must be granted on BCCH's breach of contract claim.

Generally, "the construction and legal effect to be given a contract is a question of law." *Koga Eng'g & Const., Inc. v. State*, 122 Haw. 60, 72 (2010). Contracts are "interpreted according to their plain, ordinary, and accepted sense in common speech." *Hawaiian Ass'n of Seventh-Day Adventists v. Wong*, 130 Haw. 36, 45 (2013). "The court's objective is 'to ascertain and effectuate the intention of the parties as manifested by the contract in its entirety.'" *Id.* (quoting *Brown v. KFC National Management Co.*, 82 Haw. 226, 240 (1996)). Courts generally do not look outside the contract itself to assist in its interpretation:

> As a general rule, the court will look no further than the four corners of
> the contract to determine whether an ambiguity exists. The parol evidence

rule precludes the use of extrinsic evidence to vary or contradict the terms of an unambiguous and integrated contract. This rule, however, is subject to exceptions that permit the court to consider extrinsic evidence when the writing in question is ambiguous or incomplete. Where there is any doubt or controversy as to the meaning of the language, the court is permitted to consider parol evidence to explain the intent of the parties and the circumstances under which the agreement was executed.

*Id.* at 45–46 (internal quotation marks and citations omitted). The parol evidence rule "is one of substantive law . . . [and] bars evidence of collateral agreements that would vary or alter the written terms [of a contract]." *State Farm Fire and Cas. Co. v. Pacific Rent-All, Inc.*, 90 Haw. 315, 324 (1999) (quoting *Cosmopolitan Fin. Corp. v. Runnels*, 2 Haw. App. 33, 37–38 (1981) (emphasis omitted).

        a.      *The statute of limitations bars most of the alleged breaches.*

Fujifilm argues that the contract's one-year limitations period applies to the breach of contract claim. ECF No. 43-1 at 27–28. BCCH does not dispute this and appears to concede that the one-year limitations period specified in the contract applies to all the claims. ECF No. 62 at 8 (stating that BCCH filed all its "claims within one year of Fujifilm's [breach]"); *Id.* at 7 ("[T]he plain meaning of [the contract] provide[s] that all claims against it must be brought within one year[.]"). Indeed, the contract states that "all claims against [Fujifilm] . . . must be brought within one year after the cause of action arises," ECF No. 43-11 at 6, and BCCH does not argue that this provision is inapplicable. Thus, the Court finds that the

contract's one-year limitations period applies to all the claims, including the breach of contract claim.

BCCH argues in its opposition that the statute of limitations does not bar the claims here because: (1) the discovery rule applies, and there is a reasonable dispute of material fact about when BCCH discovered the claims; (2) Fujifilm had an ongoing duty to repair or replace which continually reset the statute of limitations; and (3) equitable tolling applies. *See* ECF No. 62 at 6–11.

Although Fujifilm argues that under the UCC, the statute of limitations for a breach of contract claim begins to run once "the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach," HRS § 490:2-725 (2), here, it is the contract's statute of limitation that applies. The contract states that BCCH must bring any claims against Fujifilm within one year "after the cause of action arises," without specifying when a cause of action arises. *See* ECF No. 43-11 at 6 [§ 11(d)]. The parties disagree over whether the term "arises" incorporates a discovery rule.

Even if the discovery rule applies, there is no genuine dispute that BCCH discovered most of its breach of contract claims well before the one-year limitations period. Dr. Rhodes' declaration states that "[a]fter the equipment was installed, [she] discovered that Mr. Kurosu [(the on-site service engineer)] was not trained to service BCCH's equipment"; the equipment "malfunctioned once it was

installed in BCCH's office location"; "[a]fter the 2013 replacement installation, several key features of the equipment remained inoperable"; the equipment "immediately continued to malfunction" after repairs were made in August 2015; and "Fujifilm failed to repair the image annotations until after August 2015." ECF No. 62-1 at 2–3. Contemporaneous emails from Dr. Rhodes to Fujifilm confirm that BCCH was aware of the alleged equipment malfunctions and failures to repair by no later than 2015. *See, e.g.*, ECF No. 62-3 at 16–17; ECF No. 43-24. Even the Complaint alleges that BCCH experienced "massive technical problems" with the machinery "beginning in October 2012," and that BCCH became aware in 2012 and 2013 that Fujifilm was not adequately fixing them. *See* ECF No. 1 ¶¶ 25–26, 30–31. Thus, there is no dispute that BCCH became aware of the alleged service breaches more than one year prior to the lawsuit filed in 2017. The only alleged claim that BCCH discovered within one year of filing suit was Fujifilm's termination of the contract in 2017, when Fujifilm ceased conducting "routine annual maintenance" rendering the equipment "technically unsafe for medical use." ECF No. 63 ¶ 11.

Second, BCCH argues that because Fujifilm had a continual duty to repair and service the equipment, the statute of limitations renewed continuously until Fujifilm terminated the contract in 2017. *See* ECF No. 62 at 9–10. BCCH cites to *Dominguez v. Price Okamoto Himeno & Lum*, No. 28140, 2009 WL 1144359

(Haw. Ct. App., Apr. 29, 2009), for the proposition that "where a contract provides for continuing performance over a period of time, each breach may begin the running of the statute anew such that accrual occurs continuously." *Id.* But the court in *Dominguez* relied on New York case law, which merely states that where there is a continual duty, each failure of that duty may constitute a separate breach, thereby beginning the statute of limitations period for that breach. *See, e.g.*, *Stalis v. Sugar Creek Stores, Inc.*, 295 A.D.2d 939, 941 (N.Y. App. Div. 2002). Thus, even where there is a continuous duty, claims for damages arising outside of the statute of limitations period remain time-barred. *Id.* Fujifilm's alleged continuous duty to repair does not continuously restart the accrual date for all previous breaches as BCCH suggests. *See Molokai Serv's Inc. v. Hodgins*, No. CAAP-15-0000464, 2018 WL 1083050, at *8 (Haw. Ct. App., Feb. 28, 2018) (holding that even where a continuous tort applies to renew the statute of limitations continuously, "recovery may be had for all damages accruing within the statutory period before the action, although not for damages accrued before that period."). Thus, even assuming Fujifilm was under a continuous duty to service and repair the equipment, BCCH may only recover damages for a breach of that duty within the contract's one-year limitations period.

Lastly, BCCH argues that equitable tolling should apply because "Fujifilm misrepresented its ability to repair and maintain the equipment that it sold to

BCCH and had to replace the equipment that it could not repair." ECF No. 62 at

10. "Equitable tolling is defined as the doctrine that the statute of limitations will

not bar a claim if the plaintiff, despite diligent efforts, did not discover the injury

until after the limitations period had expired." *Narmore v. Kawafuchi*, 112 Haw.

69, 75 n.15 (2006) (internal quotations marks and alterations omitted). Thus, at a

minimum, equitable tolling cannot apply where the Plaintiff did in fact discover the

claim within the statute of limitations period. Moreover, to the extent that BCCH

attempts to argue that Fujifilm fraudulently concealed the claims against it, the

Ninth Circuit has held that "[t]o avoid the bar of limitation by invoking the concept

of fraudulent concealment, the plaintiff must allege facts showing affirmative

conduct upon the part of the defendant which would, under the circumstances of

the case, lead a reasonable person to believe that he did not have a claim for

relief." *Rutledge v. Bos. Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir.

1978). Here, BCCH knew of the alleged service issues by at least 2015 and has

not alleged that Fujifilm concealed the claim. Thus, equitable tolling does not

apply.

In sum, the contract's one-year limitations period bars all the alleged failures

of the equipment and alleged failures to service the equipment that took place

outside of the one-year limitations period. Thus, only BCCH's claim that Fujifilm

terminated the agreement and ceased routine maintenance in 2017 falls within the one-year limitations period.  It fails, however, for the reasons discussed below.

> b.   *BCCH has not presented evidence that it performed its obligations.*

Fujifilm argues that because BCCH failed to pay any annual service fees due under the contract, BCCH cannot prevail on its claim for breach of the Service Agreement.  *See* ECF No. 43-1 at 37.  To prevail on a breach of contract claim, a plaintiff must prove, among other things, that he or she "performed under the contract."  *Evergreen Eng'g, Inc. v. Green Energy Team LLC*, 884 F. Supp. 2d 1049, 1059–60 (D. Haw. 2012).  "In Hawaii, it is well-established that a party cannot recover for a breach of contract where she fails to comply with the contract herself."  *Port Lynch, Inc. v. Samsung Fire & Marine Ins. Co.*, No. Civ. 11-000398 DKW, 2013 WL 5771197, at \*6 (D. Haw. Oct. 24, 2013) (quoting *Otani v. State Farm Fire & Cas. Co.*, 927 F. Supp. 1330, 1337 (D. Haw. 1996)).  In opposition, BCCH merely asserts that Fujifilm breached first, thus excusing BCCH's performance.  *See* ECF No. 63 at 11.

BCCH contends that the equipment failed almost immediately after Fujifilm installed it, and that Fujifilm was in breach of the Service Agreement "from its inception."  *Id.*  However, the Service Agreement did not begin until May 2014,

after the warranty period expired.[3]  *See* ECF No. 1 ¶¶ 14, 15, 36, 37; ECF No. 44 ¶

21.  Further, the Service Agreement required BCCH to pay the annual service fees

in advance of services.  *See* ECF No. 43-14 at 3.  Fujifilm thus could not have

breached the Service Agreement before the annual fees were due.  Regardless,

BCCH cannot prevail on its breach of contract claim without having paid any

annual fees.  *See, e.g.*, *Port Lynch*, 2013 WL 5771197, at *6 (D. Haw. Oct. 24,

2013).

      There is no genuine dispute over whether BCCH ever paid any annual

service fees.[4]  In its Concise Statement of Facts, BCCH admits that it owed

$33,270 per year to Fujifilm under the Service Agreement, ECF No. 63 at 1

(admitting Fujifilm's eleventh concise statement of fact), but has offered no

evidence that it ever paid.  Nor has BCCH put forward any evidence or legal

authority supporting its vague claim that Fujifilm waived BCCH's obligation to

pay the annual service fees.  Indeed, the End User Agreement states that no waiver

of any right will apply unless Fujifilm waives the right in writing.  *See* ECF No.

43-11 at 9.  Because BCCH concedes that it failed to perform its obligations under

---

[3] BCCH does not allege that Fujifilm violated the warranty.  Indeed, if, as BCCH argued at the hearing, Fujifilm's first breach was in 2017, that breach occurred long after the warranty period expired.

[4] Although BCCH states in its concise statement of facts that it "disputes the remaining facts" of Fujifilm's concise statement of facts, which includes Fujifilm's assertion that BCCH never paid the annual fees, BCCH does not provide any evidence showing otherwise.  *See* ECF No. 63 at 1.

the Service Agreement, ECF No. 62-1 ¶ 15, BCCH cannot sustain its breach of contract claim against Fujifilm and summary judgment must be granted.

<em>c.    The contract precludes recovery here.</em>

Fujifilm further argues for summary judgment on the grounds that there are no damages available to BCCH under the contract, because the contract bars any claims for consequential damages and limits any damages to the annual service fees paid by BCCH, which BCCH never paid.  ECF No. 43-1 at 35.  BCCH did not address this issue in its opposition, and the Court does not consider BCCH's argument raised for the first time at the hearing.  *See, e.g.*, *Rice Corp. v. Grain Bd. of Iraq*, 582 F.Supp.2d 1309, 1313 (E.D. Cal. 2008).

To prevail on a breach of contract claim, a plaintiff must establish damages. *See Chuck Jones and MacLaren v. Williams*, 101 Haw. 486, 500 (2003) (monetary damages a material element of breach of contract claim); *see also Choy v. Cont'l Cas. Co.*, No. CV 15-00281 SOM/KSC, 2015 WL 7588233, at *4 (D. Haw. Nov. 25, 2015) ("A breach of contract claim requires a showing of damages.").  The End User Agreement states that "[T]he liability of [Fujifilm] . . . if any, and Customer's sole and exclusive remedy for damages for any claim of any kind whatsoever with respect to this Agreement . . . shall not be greater than the amount paid by Customer for the applicable annual fee for such obligation giving rise to such claim."  ECF No. 43-11 at 6.  Because BCCH did not pay any service fees, it

cannot avail itself of any damages under the contract.[5]  *See* ECF No. 44 ¶ 28.

Therefore, BCCH cannot prevail on its breach of contract claim.

For all the reasons discussed, the Court GRANTS summary judgment on

BCCH's breach of contract claim.

### ii.    Negligent Misrepresentation (Count II)

Fujifilm moves for summary judgment on BCCH's negligent

misrepresentation claim, arguing that: (1) the one-year limitations period applies;

(2) the claim is based on future promises rather than statements of fact; (3) BCCH

could not have reasonably relied on the oral promises because they were

contradicted by the contract language; and (4) BCCH did not rescind the contract

after learning of the misrepresentations and instead continued to receive substantial

benefits from Fujifilm.  ECF No. 43-1 at 29–30, 39–41.  Although BCCH opposes

Fujifilm's argument on the statute of limitations issue, it does not address

Fujifilm's other arguments.  Even if BCCH did not waive its arguments on the

issues it fails to oppose, Fujifilm is entitled to summary judgment.

---

[5] Although BCCH argues in its Opposition that Fujifilm's antecedent breach excuses its obligation to pay any annual service fees, ECF No. 62 at 11, that argument only addresses the issue of whether BCCH's failure to pay the annual service fees was itself a breach of the contract.  Even if BCCH is correct that BCCH's failure to pay the annual fees was excused, whether BCCH has any damages available under the contract is a separate issue that BCCH does not address in its opposition.

### a. The alleged misrepresentations are not actionable.

To establish a claim for negligent misrepresentation, BCCH must show that (1) Fujifilm provided false information negligently; (2) BCCH relied upon the misrepresentation; and (3) BCCH suffered a resulting loss. *Santiago v. Tanaka*, 137 Haw. 137, 154 (2016). Such a claim can only rely on false statements concerning past or existing material facts. *See Haw. Comm. Fed. Credit Union v. Keka*, 94 Haw. 213, 230 (2000); *Shoppe v. Gucci Am., Inc.*, 94 Haw. 368, 386 (2000). Claims alleging misrepresentations that induced agreement to a contract cannot be based on promises of future conduct or the future terms of the agreement. *See Haw. Comm. Fed. Credit Union v. Keka*, 94 Haw. 213, 230 (2000).

In the Complaint, BCCH alleges that Fujifilm verbally told BCCH that (1) it had six "cross-trained" field service engineers available in Hawai'i; (2) it would provide adequate technical support; (3) it would reimburse BCCH for annual service fees based on actual usage; and (4) it would compensate BCCH for any losses incurred due to service failures. ECF No. 1 at 10. Fujifilm argues that even assuming it made these statements, they are promises of future conduct under the contract and cannot give rise to liability. ECF No. 43-1 at 40.

BCCH's Concise Statement of Facts alleges only three statements by Fujifilm that could be the basis of its negligent misrepresentation claim: (1) that

Fujifilm would adjust the annual fees based on actual usage; (2) that Fujifilm would be able to provide on-site equipment repair within hours; and (3) that Fujifilm had six "cross-trained" engineers in Hawaii. *See* ECF No. 63 ¶¶ 1–2. The first alleged misrepresentation—that Fujifilm would adjust the annual fees based on usage—relates to Fujifilm's future performance under the Service Agreement. Indeed, the Service Agreement specifies BCCH's obligation to pay annual service fees, further demonstrating that this alleged misrepresentation concerned the parties' future obligations under the contract, not past or existing material fact. *See* ECF No. 43-14 at 3. It is therefore not actionable. *See Shoppe*, 94 Haw. at 386. The second alleged misrepresentation—that Fujifilm would perform on-site repair within hours—is also a statement of future conduct under the contract and is therefore not actionable. *See* ECF No. 43-14 at 3 (contract requires one hour telephonic and four-hour on-site response times).

The third alleged misrepresentation—that Fujifilm had six "cross trained" service engineers in Hawaiʻi—is, however, a statement of existing fact.[6] Thus, this third alleged misrepresentation is not barred as a matter of law. However, as

---

[6] Fujifilm mischaracterizes the alleged misrepresentation as a statement of what Fujifilm would provide to BCCH in the future. *See* ECF No. 43-1 at 40.

discussed more fully below, the statute of limitations bars this alleged misrepresentation.[7]

> b. *The statute of limitations bars the only actionable misrepresentation.*

Fujifilm argues that the contract's one-year limitations period applies to the negligent misrepresentation claim. ECF No. 43-1 at 29–30. BCCH does not dispute and seems to concede that the contract's one-year limitations period applies to all the claims. ECF No. 62 at 8 (stating that BCCH filed all its "claims within one year of Fujifilm's [breach]"); *Id.* at 7 ("[T]he plain meaning of [the contract] provide[s] that all claims against it must be brought within one year."). Thus, the Court finds that the contract's one-year limitations period applies to all the claims, including the negligent misrepresentation claim.

Although BCCH's arguments opposing the statute of limitations issue appear to address only the breach of contract claim, the Court assumes that BCCH opposes the statute of limitations issue for the negligent misrepresentation claim on the same grounds: that the discovery rule, the continuous duty doctrine, and equitable tolling all make the claims timely.

---

[7] Because the statute of limitation bars this claim, the Court does not address whether Plaintiff has satisfied the remaining elements of a negligent misrepresentation claim.

Assuming the discovery rule applies, BCCH admits in its Complaint that it discovered as early as 2012 that Fujifilm "had only one field service engineer in Hawai'i," and that the engineer was not properly trained. *See* ECF No. 1 ¶¶ 25–26. And Dr. Rhodes' declaration states that "[a]fter the equipment was installed, [she] discovered that Mr. Kurosu [(the on-site service engineer)] was not trained to service BCCH's equipment." ECF No. 62-1 ¶ 4. There is thus no dispute that BCCH became aware that Fujifilm's alleged misrepresentation of its six "cross-trained" engineers was false more than one year prior to the lawsuit, precluding the claim under the one-year limitations period.

BCCH's allegation that Fujifilm's continual duty under the contract renews the statute of limitations continuously is inapplicable to the negligent misrepresentation claim. *See* ECF No. 62 at 9–10. And BCCH's equitable tolling argument is inapplicable here for the same reason it is inapplicable to the breach of contract claim: namely, BCCH knew of the claim long before the statute of limitations expired, and BCCH does not allege that Fujifilm attempted to conceal the negligent misrepresentation claim from BCCH.

The Court thus GRANTS summary judgment on the negligent misrepresentation claim.

### iii.    Promissory Estoppel (Count VII)

BCCH alleges that Fujifilm made material promises to BCCH that BCCH relied upon to its detriment.  ECF No. 1 at 14–15.  Fujifilm seeks summary judgment on the grounds that promissory estoppel is not available when an express contract concerns the same subject matter.  ECF No. 43-1 at 38.  BCCH did not address this argument in its opposition.  *See* ECF No. 62.  Fujifilm further contends that the contract's one-year statute of limitations bars the claim.

### a.    The promissory estoppel claims are barred.

Hawaiʻi "observes the principle, long-invoked in the federal courts, that 'equity has always acted only when legal remedies were inadequate.'"  *Porter v. Hu*, 116 Haw. 42, 55 (Haw. Ct. App. 2007) (quoting *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 509 (1959)).  Thus, "[w]here the parties to a contract have bargained for a particular set of rights and obligations, all claims involving those express rights and obligations properly lie in contract law and not in equity."  *AAA Haw., LLC v. Haw. Ins. Consultants, Ltd.*, CV No. 08-00299 DAE-BMK, 2008 WL 4907976, at *3 (D. Haw. Nov. 12, 2008).  One of the purposes of the rule "is to guard against the use of equitable remedies to 'distort a negotiated arrangement by broadening the scope of the contract.'"  *Id.* (quoting *Gibbs-Brower Int'l v. Kirchheimer Bros. Co.*, 611 F. Supp. 122, 127 (N.D. Ill. 1985).  Thus, the

promissory estoppel claims are barred if the contract covers the subject matter of the alleged promises made.

Although BCCH waived the issue by failing to address it in its Opposition, even assuming no waiver, the promissory estoppel claim fails because the contract addresses the same topics as the alleged promises. BCCH alleges that: (1) Fujifilm promised that the annual service fees "would be later adjusted based upon actual mammogram totals," (2) Fujifilm promised that it would be able to provide "on-site equipment repair within hours," and (3) Fujifilm promised to have six "cross-trained" engineers available in Hawaiʻi. ECF No. 63 ¶¶ 1–2. The contract, however, squarely addresses the subject matter of these alleged commitments by specifying that: (1) BCCH would be billed annually at the rate of $33,270 without specifying any future usage adjustment; (2) Fujifilm would provide "[one] hour telephonic response and [four] hour on-site response for hard down systems within 150 miles of [Fujifilm] personnel;" and (3) the service coverage consists of "[f]actory trained FUJIFILM Field Service Engineers." ECF No. 43-14 at 3. Because the contract expressly defines the parties' obligations regarding the annual service fees, the time constraints for service performance, and the service personnel to perform the service, BCCH's promissory estoppel claim is barred.

Further, the contract expressly forbids oral modifications of the contract. ECF No. 43-11 at 10; *see also* ECF No. 44 ¶ 9. BCCH's promissory estoppel

claim effectively "distort[s] a negotiated arrangement" by changing the terms of the contract, and therefore cannot survive. *AAA Haw., LLC*, 2008 WL 4907976, at *3.

> b. *The statute of limitations also bars the promissory estoppel claims.*

Fujifilm argues that the contract's one-year limitations period applies to the promissory estoppel claim. ECF No. 43-1 at 28–29. Just as with the negligent misrepresentation claim discussed above, BCCH does not contend that the contract's one-year limitations period is inapplicable to the promissory estoppel claim. Thus, the Court finds that the contract's one-year limitations period applies to all the claims, including the promissory estoppel claim.

Although BCCH's arguments opposing the statute of limitations issue appear to address only the breach of contract claim, the Court assumes that BCCH opposes the statute of limitations defense for the promissory estoppel claim on the same grounds.

Assuming the discovery rule applies, there is no genuine dispute that BCCH discovered its promissory estoppel claim more than one year prior to filing suit. With respect to the first alleged promise, that the annual services "would be later adjusted based upon actual mammogram totals," ECF No. 63 ¶¶ 1–2, BCCH knew that Fujifilm was not adjusting the contract price of $33,270 once Fujifilm began to bill BCCH for the Service Agreement in 2014. *See* ECF No. 62-1 ¶ 15 ("Fujifilm

began to send BCCH invoices for service fees in 2014, which [Dr. Rhodes] disputed . . . ."); ECF No. 43-28 (Fujifilm invoices to BCCH from 2014 to 2017 for quarterly payments of the $33,270). Regarding the promise that Fujifilm would be able to provide on-site repair within hours, BCCH does not allege or cite to any evidence that Fujifilm failed to respond to service calls within hours, *see* ECF No. 62, and to the extent that BCCH's general allegations of inadequate support encompass a failure to timely respond, BCCH discovered these alleged shortcomings at least by 2015. *See* ECF No. 62-3 at 16–17 (email from Dr. Rhodes in August 2015 stating that she was "lied to" regarding Fujifilm's support capabilities in Hawaii); ECF No. 1 ¶¶ 25–26, 30–31; ECF No. 62-1 ¶ 4; *see also* ECF No. 62-3 at 2 (service call on January 5, 2013 alleging slow call-back response time). And for the same reasons discussed for the negligent misrepresentation claim, BCCH discovered the third alleged broken promise to provide six cross-trained service engineers long before one year of filing suit. *See* ECF No. 1 ¶¶ 25–26; ECF No. 62-1 ¶ 4.

For the same reasons discussed above, the continual duty and equitable tolling doctrines do not make the promissory estoppel claim timely. Thus, even assuming the discovery rule applies, the promissory estoppel claim is barred by the statute of limitations.

The Court therefore GRANTS summary judgment on the promissory estoppel claim.

## B.    Fujifilm's Counterclaim Against BCCH

Fujifilm also moves for summary judgment on its counterclaim against BCCH, alleging that BCCH breached the Service Agreement by failing to pay the annual service fees.  BCCH, however, opposes the motion on the grounds that Fujifilm's failure to repair the equipment excused BCCH's payment obligation. ECF No. 62 at 11.

In support of its contention that BCCH has not offered evidence of Fujifilm's breach of of its service obligations, Fujifilm argues that the Court should strike Dr. Rhodes' declaration as a sham affidavit because it contradicts her deposition testimony, or because Dr. Rhodes is not an expert and is not qualified to testify about the machinery.  *See* ECF No. 66 at 14–17.  Under the sham affidavit rule, "a party cannot create an issue of fact by an affidavit contradicting [her] prior deposition testimony."  *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (citations and quotation marks omitted).  "In order to trigger the sham affidavit rule, the district court must make a factual determination that the contradiction is a sham, and the 'inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the

affidavit.'"  *Id.* (quoting *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998–99

(9th Cir. 2009)).

Fujifilm asserts that the following deposition testimony contradicts the

declaration of Dr. Rhodes:[8]

> Q:  Can you recall the major problems or issues, if any, that you had
> with the first Aspire HD unit?
>
> A:  That was not part of my job.  I – the tech would come into my
> office and say, "We can't do mammograms."  I don't know.  I'm not
> an engineer.  I don't do the mammograms.  I don't know how to
> operate the machine, and I was not part of that.
>
> Q:  But my question is whether you heard it from a tech or through
> your own personal hands-on experience, what were the major issues
> that BCCH had with the first unit?
>
> A:  I – I cannot list them for you because I was involved in a different
> way.
>
> Q:  You were involved.  You were reading the mammograms; correct?
>
> A:  Yes.
>
> Q:  Was that the limit of your involvement with the machinery?
>
> A:  With the machinery, with the digital mammography, yes.

ECF No. 43-52 at 168:5–168:25.  This deposition testimony establishes that Dr.

Rhodes was not the person who employed the Aspire HD equipment to take the

mammograms (apparently referred to as the digital mammography unit).  But the

---

[8] In Dr. Rhodes' declaration, she states that all the equipment malfunctioned, and
that Fujifilm was unable to adequately repair it.  ECF No. 62-1 ¶¶ 5–14.

deposition questions and Dr. Rhodes' responses appear limited to the digital mammography unit used to take the mammograms, not the equipment used to read them. *See* ECF No. 43-1 at 10–11. Dr. Rhodes testified that she read the mammograms, and therefore would have had first-hand knowledge of the equipment used to read and annotate the images as well. Thus, Dr. Rhodes' deposition testimony does not preclude Dr. Rhodes from discussing the image quality and her ability to read and annotate the mammograms.

Dr. Rhodes' declaration concerns the digital mammography unit and biopsy positioner, but it also discusses the mammogram image quality and Dr. Rhodes' ability to read and annotate the mammograms. *See* ECF No. 62-1. Dr. Rhodes' declaration also addresses Fujifilm's general service capabilities. *Id.* ¶ 4. Thus, even if the Court were to strike Dr. Rhodes' declaration related to specific allegations of issues with the equipment used to take the mammograms, there are still uncontradicted portions of her declaration concerning reading and annotating the mammogram images and Fujifilm's general support capabilities. ECF No. 62-1 ¶¶ 4, 6, 7, 10, 11, 13. Those portions of Dr. Rhodes' declaration are enough to create a triable issue of fact regarding Fujifilm's performance of its service obligations.

There is thus a dispute of material fact over whether Fujifilm breached the agreement by failing to properly perform its service obligations. *Compare* ECF

No. 44 at 5 ¶ 19 *with* ECF No. 63 ¶¶ 5–11.  To prevail on its breach of contract

claim, Fujifilm must establish that it performed its own obligations.  *See Evergreen*

*Eng'g*, 884 F. Supp. 2d at 1059–60.  For this reason, the Court DENIES summary

judgment on Fujifilm's counterclaim against BCCH.

## IV. CONCLUSION

For the reasons set forth above, the Court DISMISSES the following claims from BCCH's Complaint and TERMINATES the Motion as to these claims: Fraudulent Inducement (Count I); Breach of Implied Covenant of Good Faith and Fair Dealing (Count IV); Intentional Interference (Count V); Unjust Enrichment (Count VI); Declaratory Relief (Count VIII); and Specific Performance (Count IX). The Court GRANTS Fujifilm's Motion for Summary Judgment on BCCH's remaining claims and DENIES Fujifilm's Motion for Summary Judgment on its counterclaim.

IT IS SO ORDERED.

DATED: Honolulu, Hawai'i, May 16, 2019.

Jill A. Otake
United States District Judge

BREAST CARE CENTER OF HAWAI'I, LLC V. FUJIFILM MEDICAL SYSTEMS U.S.A., INC., CIVIL NO. 17-443 JAO-WRP – ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

32